# In the United States Court of Federal Claims
## OFFICE OF SPECIAL MASTERS
### No. 19-0943V
### UNPUBLISHED

| | |
|---|---|
| SANDRA LUCCHESI,<br><br>      Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES,<br><br>      Respondent. | Chief Special Master Corcoran<br><br>Filed: October 4, 2021<br><br>Special Processing Unit (SPU);<br>Decision Awarding Damages; Pain<br>and Suffering; Influenza (Flu)<br>Vaccine; Shoulder Injury Related to<br>Vaccine Administration (SIRVA) |

*Bridget Candace McCullough*, Muller Brazil, LLP, Dresher, PA, for Petitioner.

*Mark Kim Hellie*, U.S. Department of Justice, Washington, DC, for Respondent.

## **DECISION AWARDING DAMAGES**[1]

On June 28, 2019, Sandra Lucchesi filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"). Petitioner alleges that she suffered a shoulder injury related to vaccine administration ("SIRVA") as a result of an influenza ("flu") vaccine she received on November 29, 2017. Petition at 1. The case was assigned to the Special Processing Unit ("SPU") of the Office of Special Masters. Because the parties could not agree on all damages components, the matter was designated for SPU "Motions Day," and argument was heard on September 24, 2021.

---

[1] Because this unpublished Decision contains a reasoned explanation for the action in this case, I am required to post it on the United States Court of Federal Claims' website in accordance with the E-Government Act of 2002.  44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services). **This means the Decision will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

For the reasons set forth below, and as represented during the hearing,[3] I find that Petitioner is entitled to compensation in the amount of **$76,380.00**, **representing $75,000.00 for actual pain and suffering, plus $1,380.00 for past unreimbursed expenses.**

## I.  Relevant Procedural History

After the petition's initiation, Respondent filed his Rule 4(c) Report in November 2020, conceding that Ms. Lucchesi was entitled to compensation, and a Ruling on Entitlement followed. Rule 4(c) Report (ECF No. 20) at 1, 4; ECF No. 21. Thereafter, the parties attempted to informally resolve the issue of damages but reached an impasse on an appropriate award. ECF No. 29. I subsequently proposed that the parties be given the opportunity to argue their positions at a motions hearing, at which time I would decide the disputed damages issue. ECF No. 33.

Prior to hearing, both sides filed briefs setting forth their respective positions. Petitioner's Brief in Support of Damages, dated July 21, 2021 ("Br."), ECF No. 32; Respondent's Damages Brief, dated August 23, 2021 ("Opp."), ECF No. 35.  The hearing was held on September 24, 2021.

## II.  The Parties' Arguments

### a.  Pain and Suffering

Petitioner requests $75,000.00 in actual pain and suffering, arguing that her course of treatment (including an MRI, seven sessions of physical therapy and two steroid injections, plus a "barbotage" procedure, in which imaging is used to view calcium deposits in the shoulder, which are thereafter broken up with a needle for reabsorption) warrants an award at that level. Br. at 6-9. Further, Petitioner argues that she experienced significant pain immediately following vaccination, and that her symptoms interfered with her activities of daily living for at least eight months. *Id.* Respondent, by contrast, proposes an award of no more than $57,000 for Petitioner's pain and suffering. Opp. at 1. He argues that "Petitioner's medical records reflect that she sustained a comparatively minor injury and received some conservative treatment." *Id.* at 6.

---

[3] *See* Minute Entry dated August 27, 2021. The transcript of this hearing, which was not yet filed as of the date of this Decision, is hereby incorporated into this Damages Decision by reference.

### b. Out-of-Pocket Medical Expenses

Petitioner requests $1,380.00 in out-of-pocket medical expenses. Br. at 1, 7. Although Respondent does not contest $1,340.00 of this amount, he argues that the cost of Petitioner's barbotage should not be reimbursed because "[t]here is no evidence that these calcium deposits were sequela of petitioner's SIRVA." (citation omitted). Opp. at 7.

### III. Legal Standard

Compensation awarded pursuant to the Vaccine Act shall include an award "[f]or actual and projected pain and suffering and emotional distress from the vaccine-related injury, an award not to exceed $250,000." Section 15(a)(4). Additionally, a petitioner may recover "actual unreimbursable expenses incurred before the date of judgment awarding such expenses which (i) resulted from the vaccine-related injury for which petitioner seeks compensation, (ii) were incurred by or on behalf of the person who suffered such injury, and (iii) were for diagnosis, medical or other remedial care, rehabilitation . . . determined to be reasonably necessary." Section 15(a)(1)(B). Petitioner bears the burden of proof with respect to each element of compensation requested. *Brewer v. Sec'y of Health & Human Servs.*, No. 93-0092V, 1996 WL 147722, at *22-23 (Fed. Cl. Spec. Mstr. Mar. 18, 1996).

There is no precise formula for assigning a monetary value to a person's pain and suffering and emotional distress. *I.D. v. Sec'y of Health & Human Servs.*, No. 04-1593V, 2013 WL 2448125, at *9 (Fed. Cl. Spec. Mstr. May 14, 2013) ("Awards for emotional distress are inherently subjective and cannot be determined by using a mathematical formula"); *Stansfield v. Sec'y of Health & Human Servs.*, No. 93-0172V, 1996 WL 300594, at *3 (Fed. Cl. Spec. Mstr. May 22, 1996) ("the assessment of pain and suffering is inherently a subjective evaluation."). Factors to be considered when determining an award for pain and suffering include: 1) awareness of the injury; 2) severity of the injury; and 3) duration of the suffering. *I.D.*, 2013 WL 2448125, at *9 (quoting *McAllister v. Sec'y of Health & Human Servs.,* No 91-1037V, 1993 WL 777030, at *3 (Fed. Cl. Spec. Mstr. Mar. 26, 1993), *vacated and remanded on other grounds*, 70 F.3d 1240 (Fed. Cir. 1995)).

I may also consider prior pain and suffering awards to aid in the resolution of the appropriate amount of compensation for pain and suffering in each case. *See, e.g.*, *Doe 34 v. Sec'y of Health & Human Servs.*, 87 Fed. Cl. 758, 768 (2009) (finding that "there is nothing improper in the chief special master's decision to refer to damages for pain and suffering awarded in other cases as an aid in determining the proper amount of damages in this case."). And, of course, a special master may rely on his or her own experience adjudicating similar claims. *Hodges v. Sec'y of Health & Human Servs.*, 9 F.3d 958, 961 (Fed. Cir. 1993) (noting that Congress contemplated that special masters would use their accumulated expertise in the field of vaccine injuries to judge the merits of individual

3

claims). Importantly, however, it must also be stressed that pain and suffering is not determined based on a continuum. *See Graves v. Sec'y of Health & Human Servs.*, 109 Fed. Cl. 579 (2013).

### IV. Appropriate Compensation in this Matter

#### a. Pain and Suffering

In this case, awareness of the injury is not disputed. The record reflects that at all times Petitioner was a competent adult with no impairments that would impact her awareness of her injury. Therefore, I analyze principally the severity and duration of Petitioner's injury. When performing this analysis, I review the record including the filed affidavit and medical records, written briefs, and argument at the September 24th Motions Day hearing. I have also considered prior awards for pain and suffering in both SPU and non-SPU SIRVA cases, and rely upon my experience adjudicating these cases. Based upon the above, I note and find the following:

- Petitioner received the flu vaccine alleged as causal on November 29, 2017. Ex. 1 at 1. Six days later, on December 5, 2017, Petitioner emailed her primary care physician, Dr. Lisa Montgomery, to report "excruciating" shoulder pain since receiving the flu shot. Petitioner expressed concern that she was suffering from a SIRVA injury. Ex. Ex. 2 on 294.

- Petitioner presented to Dr. Maya Land on December 7, 2017 with severe left shoulder pain. Ex. 2 at 299-300. She reported experiencing "usual soreness" on the first night preceding her vaccination, but noted that her pain became "incredible" in the subsequent days. *Id.* at 299. Petitioner further reported experiencing nausea and chills. *Id.* Dr. Land opined that these latter symptoms were the result of "extreme pain" and diagnosed Petitioner with an adverse vaccine reaction. *Id.* at 301, 322. Further, an MRI was ordered and Petitioner was referred to physical therapy. *Id.* at 322. Dr. Land acknowledged that Petitioner was "in too much pain now" and suggested that she follow up with physical therapy in the following week. *Id.*

- Petitioner presented for a telephonic medical appointment on December 8, 2017 with Dr. Montgomery. Ex. 2 at 328-32. She reported "intense shoulder joint pain, so much that it makes her nauseous" and that she was "unable to keep down either pain medication or nausea medication." *Id.* at 328. Petitioner was prescribed oxycodone-acetaminophen and Zofran. *Id.* at 328-32.

- Petitioner underwent an MRI of her left shoulder on December 13, 2017. Ex. 2 at 359-60. It revealed a rotator cuff tear and edema in the tendons and subchondral marrow. *Id.* at 360. The MRI report indicates that "[t]hese changes may reflect inflammatory changes secondary to calcific tendinitis. Given [Petitioner's] history of pain developing following recent flu vaccination, I cannot exclude secondary/coexisting infection which should be excluded." *Id.*

- On December 14, 2017, Petitioner presented to Dr. Shawn Hsieh, a sports medicine specialist, for an initial evaluation of her left shoulder. Ex. 2 at 372-74. The medical note documenting this appointment indicates that Petitioner experienced "sudden severe onset [of] left shoulder pain following flu vaccination." *Id.* at 372. Petitioner was administered a cortisone injection, instructed to avoid strenuous activity for the following five-to-six days, and referred to physical therapy. *Id.* at 373.

- Petitioner underwent a physical therapy evaluation on December 19, 2017. Ex. 2 at 406-12. The progress note documenting this session indicates that Petitioner was diagnosed with calcific tendinitis in her left shoulder. *Id.* at 406. Petitioner rated her pain as ranging from three to five on a ten-point subjective pain scale. *Id.* at 407.

- Between December 19, 2017 and January 18 2018, Petitioner completed four sessions of physical therapy. Ex. 2 at 406-433. At each of these sessions, Petitioner rated her pain as ranging from three to five on a ten-point scale. *Id.* at 407, 414, 426, 433. On January 18, 2018, Petitioner reported that her left shoulder pain occurred with greater frequency and that her mobility was lessening. *Id.* at 433.

- A January 19, 2018 progress note reflects that Petitioner's physical therapy provider informed Dr. Hsieh that despite treatment, "[Petitioner] has been steadily worsening in both pain frequency and left shoulder active range of motion." Ex. 2 at 439.

- On January 26, 2018, Petitioner presented to Dr. John Tomasin, an orthopedic specialist, for a left shoulder consultation. Ex. 3 at 1-2. The record documenting this visit indicates that within 48 hours of receiving the flu shot, Petitioner experienced excruciating shoulder pain and was unable to move her shoulder. *Id.* at 1. The record further indicates that physical therapy, "did not seem to be helpful" and that despite the administration of a cortisone injection, Petitioner had been unable to regain any of her motion. *Id.* Noting that Petitioner "has been told that she has different things," Dr. Tomasin opined that Petitioner "has some calcific

5

tendinitis which almost certainly led to . . . frozen shoulder" and recommended left shoulder arthroscopy and barbotage followed by extensive physical therapy. *Id.* at 2.

- A February 27, 2018 progress note reflects that Petitioner's physical therapist informed Dr. Hsieh that despite "trials of phonophoresis (ultrasound), laser and e-stim, none have helped and [Petitioner] has been steadily worsening in both pain frequency and left shoulder active range of motion[.]" Ex. 2 at 455. This note concludes with the statement, "[r]eady to try barbotager [sic] now[.]."

- On February 27, 2018, Dr. Hsieh attempted to perform a barbotage on Petitioner's left shoulder. Ex. 2 at 455-61. This procedure was performed on an outpatient basis and Lidocaine was used as a local anesthetic. *Id.* at 456. Dr. Hsieh's notes reflect that he was "unable to aspirate back cloudy fluid" and that Petitioner was ultimately given a steroid injection. *Id.*

- On March 28, 2018, Petitioner emailed Dr. Hsieh. Ex. 2 at 479. She reported regaining some range of motion, but noted that she had "no strength at all." *Id.* Dr. Hsieh referred Petitioner to physical therapy. *Id.*

- Petitioner attended physical therapy on April 4, 2018. Ex. 2 at 493-500. The progress note documenting this visit indicates that while Petitioner "has more motion now," her left shoulder remained week and was painful. *Id.* at 494. Petitioner was prescribed a course of physical therapy once per week for twelve weeks. *Id.* at 493.

- On May 4, 2018, Dr. Hsieh called Petitioner to discuss her x-rays. Ex. 2 at 516. While the films showed that there was no longer any calcification, "[Petitioner's] period of dealing with calcific tendinitis cased atrophy and stiffness of her shoulder." *Id.* Petitioner was advised to continue her participation in physical therapy. *Id.*

- At a May 15, 2018 physical therapy appointment, Petitioner reported that her left shoulder continued to hurt. Ex. 2 at 521. She further stated that while her range or motion may have improved, she was unable to lift anything or fasten her bra. *Id.*

- Petitioner attended her final physical therapy session on July 24, 2018 (approximately eight months post-vaccination). Ex. 4 at 13-18. Petitioner reported that her pain had increased over the past month and noted "[s]harp pains with any small movement of left shoulder." *Id.* at 14. The progress note documenting this

6

appointment reflects that she was unable to perform range of motion exercises because they were too painful. *Id.*

- In her supplemental affidavit, Petitioner states that for the first three months of her injury, she had to sleep on her couch in an upright position with pillows propped underneath her left arm. Ex. 6 at 1. Petitioner further averred that she was nauseous from the pain, which was a ten on a ten-point scale, and that she was unable to complete any activities of daily living *Id.*

- Petitioner also states that her SIRVA injury impacted her home and professional life. Ex. 6 at 1-2. She noted that she was unable to fulfill her obligation to provide childcare to her grandson, was unable to independently perform duties on her farm, had to reschedule work trainings, and ultimately turned down international trips that were associated with her job. *Id.* at 2.

- Petitioner avers that, as of July 21, 2021, she continues to suffer from limited range of motion and pain Ex. 6 at 2. She states that her "[p]ain averages a 3 most days, some days escalates to 7 or 8. I am unable to sleep on my left side at all." *Id.*

The case record overall establishes that Ms. Lucchesi experienced a moderate shoulder injury which was serious enough for her to promptly seek medical care, but subsequently involved only relatively conservative (though frequent) treatment over an eight-month period. *See* Ex. 2 at 294; 299-300, 360. Ms. Lucchesi participated in seven physical therapy sessions and underwent an MRI, two steroid injections, and a barbotage procedure. Ex. 2 at 373, 413-15, 425-27, 432-33, 455-61, 493, 520; Ex.4. At her last physical therapy appointment on July 24, 2018, she reported an increase in pain and was unable to perform range of motion exercises. Ex. 4 at 14.

Despite this relatively consistent course of care, Petitioner's treatment did not exceed one year in length. Moreover, her physical therapy records indicate that she typically rated her pain as ranging from three to five on a ten-point scale. *See* Ex. 2 at 407, 414, 426, 433.

Another factor that is considered in awarding an amount for pain and suffering is the effect that Petitioner's shoulder injury has had on her personal and professional life. I note that in her affidavit, Petitioner describes the impact SIRVA has had on her ability to provide childcare for her grandson, perform duties around her farm, and to fulfill her professional obligations.

Respondent argues that Petitioner sustained a minor SIRVA injury, and that the

above-described course is similar to the petitioner in *Knauss v. Sec'y of Health & Human Servs.*, No. 16-1372V, 2018 WL 3432906 (Fed. Cl. Spec. Mstr. May 23, 2018) (awarding $60,000 for pain and suffering where petitioner sought treatment three months post-vaccination and reported a 94 percent recovery with a pain level at 1.5, underwent 15 physical therapy sessions, and received one steroid injection). However, the *Knauss* petitioner not only experienced mild pain, but also waited a substantial period before seeking treatment, and the impact on his daily life was neither extensive nor long-lasting.

Ms. Lucchesi's course of treatment is more in line with the experience of the petitioner in *Marino v. Sec'y of Health and Human Servs.*, No.16-0622V, 2018 WL 2224736 (Fed. Cl. Mar. 26, 2018) (awarding $75,000 for pain and suffering where petitioner was diagnosed with rotator cuff impingement syndrome with adhesive capsulitis and where petitioner's course of treatment consisted of 2 orthopedic evaluations, an MRI, participation in a home exercise program, and 1 cortisone injection). As with *Marino*, Ms. Lucchesi reported significant pain during her initial presentation to a medical provider. Ex. 2 at 299; *Marino*, 2018 WL 2224736 at *2-3. Moreover, like *Marino*, Ms. Lucchesi reported significant disruption of her employment duties and homelife. However, whereas the *Marino* petitioner only received one cortisone injection and did not undergo physical therapy or surgical intervention, Ms. Lucchesi received two injections, participated in seven sessions of physical therapy, and underwent a somewhat-invasive treatment procedure as well. *See also Attig v. Sec'y of Health and Human Servs.*, No. 17-1029V, 2019 WL 1749405 (Fed. Cl. Spec. Mstr. Feb. 19, 2019) (awarding $75,000 for pain and suffering awarded where petitioner rated her pain from 0-4/10, underwent 1 MRI, 1 steroid injection and participated in 12 physical therapy session over the course of approximately 5 weeks).

Under such circumstances, and considering the arguments presented by both parties, a review of the cited cases, and based on the record as a whole, I find that $75,000.00 in compensation for past pain and suffering is reasonable and appropriate in this case.

### b. Award for Out-of-Pocket Medical Expenses

As noted above, Respondent disputes awarding the cost of barbotage, arguing that it did not reflect treatment of a SIRVA sequela. Ex. 2 at 455-61; Ex. 3 at 1-2; Opp. at 7. However, Dr. Hsieh's February 27, 2018 progress note indicates that this treatment (performed approximately three months post-vaccination) was pursued only after other interventions failed to alleviate Petitioner's left shoulder symptoms – all of which began within 48 hours of her flu shot. It thus cannot be concluded from this record that the barbotage procedure was wholly unrelated to Petitioner's symptoms, since it appears to have been proposed as a potential means of addressing her pain. Although this is a close

call, petitioners are accorded the benefit of close calls in the Vaccine Program. *Roberts. v. Sec'y of Health & Human Servs.*, No. 09-427V, 2013 WL 5314698, at *10 (Fed. Cl. Spec. Mstr. Aug. 29, 2013). Therefore, I find that Petitioner is entitled to $40.00 for barbotage, in addition to the undisputed $1,340.00, for a total of $1,380.00 in out-of-pocked medical expenses.

### V.     Conclusion

Based on the record as a whole and arguments of the parties, **I award Petitioner a lump sum payment of $76,380.00**, (representing $75,000.00 for Petitioner's actual pain and suffering, and $1,380.00 for out-of-pocket medical expenses) **in the form of a check payable to Petitioner, Sandra Lucchesi.** This amount represents compensation for all damages that would be available under Section 15(a).

The Clerk of the Court is directed to enter judgment in accordance with this decision.[4]


**IT IS SO ORDERED.**

                                              **s/Brian H. Corcoran**
                                              Brian H. Corcoran
                                              Chief Special Master

---

[4] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by the parties' joint filing of notice renouncing the right to seek review.